## PLAINS REALTY COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 48977, 65492, 67197.   Promulgated October 25, 1934.

*George S. Atkinson, Esq.*, for the petitioner.
*John D. Kiley, Esq.*, and *R. B. Cannon, Esq.*, for the respondent.

### OPINION.

ADAMS: These proceedings were consolidated for hearing and involve deficiencies in the amount of $202.98 for the calendar year 1927, $1,360.28 for the calendar year 1929, and $315.53 for the calendar year 1930.

The facts are stipulated as follows:

1. The petitioner is a corporation organized, existing and operating under the laws of the State of Texas, with its principal office at San Angelo, Texas.

2. The petitioner was chartered under the laws of the State of Texas in April, 1927, for the purpose of the purchase, subdivision and sale of real property.

3. Prior to the incorporation of petitioner, Charles Dorsey and J. M. Crews became acquainted with G. I. Dorrance. Charles Dorsey and J. M. Crews were men of financial means and G. I. Dorrance was a man experienced in city real estate subdividing, who had been successful in "putting on" two or more of such projects. During the month of April, 1927, Dorsey, Crews and Dorrance verbally agreed to "put on" a real estate subdivision within or near the city of San Angelo, Texas. It was also verbally agreed among them that Dorsey and Crews would furnish the money and purchase the land; that Dorrance would give his time, skill and services to the carrying out of the project, and that the net profits, after payment of cost of land and expenses, were to be divided fifty percent to Dorsey and Crews and fifty percent to Dorrance.

4. Dorsey, Crews and Dorrance selected 100 acres of land within or near the city of San Angelo, Texas, for subdivision purposes. Dorsey and Crews purchased such land at an investment to them of $20,000.00, and then, to limit their (Dorsey and Crews) individual liability as to loss, caused the Plains Realty Company, the petitioner, to be organized, and conveyed such land and their interest in the agreement to it, in exchange for all its ($20,000.00 par value) stock, Dorrance receiving only two qualifying shares which he immediately endorsed back to Dorsey and Crews.

5. In order to make some written record of the agreement between G. I. Dorrance on the one hand, and Charles Dorsey and J. M. Crews or the Plains Realty Company on the other hand, the substance of the agreement was set forth in the minutes of the first meeting of The Board of Directors of the Plains Realty Company, which minutes are set out in full as follows:

The first meeting of the Board of Directors of Plains Realty Co. held at the First National Bank in the city of Childress, Childress County, Texas, at 4 o'clock, P. M., on the 6th day of April, A. D. 1927.

G. I. Dorrance was chosen as temporary chairman and J. M. Crews was appointed temporary Secretary of the meeting.

Directors present G. I. Dorrance, Chas. Dorsey and J. M. Crews.

All the directors being present, on motion duly made and carried, the Board proceeded to the election of officers of the corporation to serve for the ensuing corporate year and until the election and taking of office of their successors.

The following were elected:

G. I. Dorrance_____ President
Chas. Dorsey_____ Vice President
J. M. Crews_____ Secretary-Treasurer
U. S. Weddington_____ Asst. Secretary.

The permanent officers of the corporation then took charge of the meeting.

On motion duly made and carried it was ordered that no officer should receive a salary for services.

A form of stock certificate having been presented for approval was by motion adopted as the form of stock certificate of the corporation.

On motion the Treasurer was instructed to open a bank account with the First National Bank of Childress, Texas, for the deposit of funds belonging to the corporation, such funds to be withdrawn only by check of the corporation signed by the Treasurer, except when otherwise authorized by the Board of Directors.

On motion the Secretary was directed to procure a Seal, bearing the words, Plains Realty Co., Childress, Texas.

On motion it was ordered that the Secretary file the Charter with the County Clerk of Childress County, Texas, for public record.

Whereas one of the purposes for which this corporation was organized, is the purchase and sale of real estate, or the purchase, sub-division and sale of real property. And whereas this company is the owner of certain lands consisting of about one hundred acres situated near San Angelo, Texas, which they desire to subdivide for sale as city property.

It is hereby ordered that G. I. Dorrance be and is hereby appointed Manager of the subdivision and sale of said property.

That Mr. Dorrance proceed at once to San Angelo, have property surveyed and subdivided, streets marked and graded, preparatory to offering for sale, prepare and submit to the Board of Directors plans of subdivision and improvements, and plans and terms of sales.

The Board of Directors reserves the right to approve or reject plans for improvements involving the expenditure of large sums of money such as the erection of buildings, paving streets, laying of sidewalks and kindred improvements.

All necessary expense incurred in the subdividing and selling of said property shall be chargeable to and paid from the funds of the company except Mr. Dorrance shall take care of his own personal expense.

For the purpose of carrying out the plan of subdividing and sales. as above set out, Mr. G. I. Dorrance is hereby authorized to check on the company's funds for any amount desired not to exceed $1,000.00 at any one time and shall render to the Board of Directors a monthly statement showing in detail the expense incurred and money expended.

As compensation to Mr. G. I. Dorrance for the management and sale of said property, it is further ordered that the money or other property derived from sales or otherwise shall first be applied to the payment of the necessary expenses incurred in the conduct of said business, then to the liquidation of indebtedness, if any, and the return of the invested capital, the remainder, if any, shall then be divided at the ratio of one-half to Mr. G. I. Dorrance and one-half remain with the company, that is Mr. Dorrance shall receive one-half of the net gains, from the sale of the land, as above set out.

(Signed) J. M. CREWS　　　　　　　　　(Signed) G. I. DORRANCE
　　　　　　　Secretary　　　　　　　　　　　　　　　　President

6. The net profits from the sale of lots, computed on the installment basis, were entered in the petitioner's ledger in the manner following:

On December 31, 1927, entire net profits on installments in 1927, to the amount of $5,704.94, were credited to surplus account on petitioner's books.

On December 31, 1928, one-half of the above profits or $2,852.47 were charged to the surplus account and credited to an account entitled "Due G. I. Dorrance". At the close of the years 1928, 1929 and 1930 one-half of the net profits on installments were credited to the surplus account and one-half to the account entitled "Due G. I. Dorrance".

The amounts of the above items and dates charged are shown in the following summary under (a) and (b).

(a) *Credits to Surplus Account*
| | | |
|---|---|---:|
| 12/31/27 | Net profits installments 1927 | $5,704.94 |
| 12/31/28 | 50% transferred "Due G. I. Dorrance" account | 2,852.47 |
| | Leaving a balance | $2,852.47 |
| 12/31/28 | 50% net profits year 1928 | 15,042.47 |
| 12/31/29 | 50% net profits year 1929 | 6,533.71 |
| 12/31/30 | 50% net profits year 1930 | 3,186.02 |

(b) *Credits to "Due G. I. Dorrance" Account*
| | | |
|---|---|---:|
| 12/31/28 | 50% net profits year 1927 | 2,852.47 |
| 12/31/28 | 50% net profits year 1928 | 15,042.47 |
| 12/31/29 | 50% net profits year 1929 | 6,533.71 |
| 12/31/30 | 50% net profits year 1930 | 3,186.02 |

7. The petitioner on its original return for the year 1927 reported 100% of the net profits (computed on the installment plan) from the sale of lots. It, however, on March 15, 1929, filed an amended return for the year 1927 on which it deducted one-half of such profits as "Salary for G. I. Dorrance for 1927 as per contract". On its return for the year 1928 the petitioner reported all profits from sales and collection of installments as gross income but in determining its net income it deducted under Schedule C, as compensation to G. I. Dorrance, President, (time devoted to business, all) an amount equal to one-half the net profits from such sales and collections.

On its returns for the years 1929 and 1930, the petitioner reported all profits from sales of lots and collection of installments (computed on the installment

plan) as gross income, but in determining its net income it deducted as "Salary—officer—G. I. Dorrance" an amount equal to one-half of the net profits from such sales and collections.

8. The amounts deducted on the returns as salary to G. I. Dorrance for the years 1927 to 1930, inclusive, equal respectively, the amounts shown as 50% net profits on the account "Due G. J. Dorrance" set forth in paragraph 6 (b) above.

The books of the petitioner do not reflect any payments made or authorized to officers as salaries during any year.

There were no deductions taken on any of the petitioner's returns as officers' salaries except those enumerated in paragraph seven as compensation to G. I. Dorrance, and which equal 50% of the net profits as shown in paragraph 6 (b) above.

None of the amounts deducted as salary to Dorrance on the tax returns or shown in paragraph 6 (b) as credits "Due G. I. Dorrance" were paid to G. I. Dorrance during any of the years 1927 to 1930, incl.

9. Mr. G. I. Dorrance reported on his individual income tax returns for years 1927 to 1930, inclusive, as salary, the amounts shown in paragraph 6 (b) above, and the Commissioner determined his taxes accordingly.

10. The Commissioner in determining the petitioner's taxable income for each of the years 1927 to 1930, inclusive, disallowed the deduction of 50% of the profits deducted as salary of G. I. Dorrance, and held that the entire profits of the venture constituted income of the petitioner.

11. The books and records of the petitioner for all years under consideration were kept on the installment sales basis by calendar years. The petitioner's balance sheet as at December 31, 1927, follows:

ASSETS:

| | | |
|---|---|---|
| Cash in bank | | $2,167.40 |
| Due on sales contracts | | 116,092.00 |
| Stocks and bonds | | 300.00 |
| Office equipment | | 349.25 |
| Water lines Westland Park (To be purchased by West Texas Utilities Co. | | 2,588.05 |
| Unsold lots Westland Park | | 8,772.43 |
| Westland Place: | | |
| Real Estate | $10,250.00 | |
| Improvements | 1,886.63 | 12,136.63 |

DEFERRED EXPENSES:

| | |
|---|---|
| Salesman's commissions | 1,184.94 |

$143,590.70

LIABILITIES:

| | |
|---|---|
| Notes payable, bank | $6,000.00 |
| Land mortgage payable, Westland Park | 11,755.33 |
| Land mortgage payable, Westland Place | 2,690.45 |
| Advances, Dorsey and Crews | 5,437.22 |
| Deposit on lots | $15.00 |
| Salesmen's commissions payable | 1,184.94 |
| Gross profit on installment contract uncollected | 90,802.82 |

$117,885.76

CAPITAL:

| | | |
|---|---|---|
| Capital stock | $20,000.00 | |
| Net profit 1927 | 5,704.94 | |
| | | $25,704.94 |
| | | $143,590.70 |

At December 31, 1930, the total expenses, monies borrowed and capital invested in the project had not been returned in cash to the petitioner corporation or to the aforesaid Crews & Dorsey.

The sole question before us is whether petitioner is entitled to deduct from its gross income, for the years before us, the amounts credited on its books to G. I. Dorrance as compensation under the terms of the agreement evidenced by resolution of its board of directors.

We do not agree with petitioner's contention that a partnership existed between it and Dorrance. The title to the land was retained by petitioner, and, under the terms of the agreement, Dorrance was appointed general manager of the subdivision and sale of the property and was to receive, as compensation for his services, one half of the net profits from the enterprise. He had no proprietary interest in the property and no proprietary interest in the profits as profits. The extent of his interest was that his compensation was to be measured by " one-half of the net gains from the sale of the land ", as set out in the agreement.

There was no provision that he was to share the losses, if any, and the resolution of the board of directors does not evidence an intention to form a partnership. Cf. *Meehan* v. *Valentine*, 145 U. S. 611; *Sugg* v. *Hopkins*, 11 Fed. (2d) 517. Under such circumstances we do not think that a partnership existed, which, unless authorized in petitioner's charter, would have been in violation of the state laws; or that there was an attempt to form a partnership, which would require the same rules as to accounting as if a legal partnership had been formed. See *Corralitos Co.* v. *Mackay*, 31 Tex. Civ. App. 316; 72 S. W. 624; *Millers Indemnity Underwriters* v. *Patten*, 238 S. W. 240.

In support of his determination the respondent calls our attention to *Sugg* v. *Hopkins, supra; Naitove & Co.* v. *Commissioner*, 32 Fed. (2d) 949; *Block & Kohner Mercantile Co.* v. *United States*, 37 Fed. (2d) 877, and contends that in the taxable years before us all the events had not occurred from which could be determined the liability of petitioner to pay Dorrance any amount and that such liability could not be ascertained until the completion of the project. We do not agree with this contention, and we think the cases cited may be distinguished from the instant case on their facts and are not controlling here.

It is admitted that the petitioner kept its books on the accrual basis and reported its income from the sale of lots in its real estate development on the installment sales basis. Under this method it accrued and credited on its books as a liability to G. I. Dorrance one half of the net profits applicable to installments paid during the taxable years on properties sold. It made its tax returns for 1927, 1929, and 1930 upon the basis upon which its accounts were kept, claiming as an expense the amounts so credited to Dorrance. An examination of petitioner's balance sheet as of December 31, 1927, shows due on sales contracts, $116,092, and gross profits on installment contracts uncollected, $90,802.82. The balance sheets at the close of 1929 and 1930 show a similar situation. At the close of 1927 the amount of gross profits from installment sales, uncollected, was approximately twice as large as all other liabilities. At the close of 1929 the amount of gross profits uncollected plus the total amount credited to Dorrance and the accumulated surplus was five times as large as all other liabilities, and approximately the same ratio existed at the close of 1930.

The sales upon which the profits were based had already been made and it could be reasonably ascertained not only that there would be profits, but the amount of the profits. Such profits were determined and ratably apportioned to payments made during the taxable years and returned by the petitioner as income.

The respondent does not question the basis upon which the income was reported nor the allocation of the profits to the respective years, but argues that the amounts credited to Dorrance may not be deducted as an expense because they cannot be sufficiently ascertained. We are not impressed with this argument. We think under all the facts of the case petitioner could reasonably determine in the respective years not only that Dorrance would receive compensation, but the amounts of such compensation, and that such amounts were properly accrued and deducted from the gross income as expenses properly attributable to the process of earning the income reported during the respective periods. Cf. *American National Co.* v. *United States*, 274 U. S. 99; *United States* v. *Anderson*, 269 U. S. 422. The petitioner's contention is sustained.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

BLACK, ARUNDELL, and LEECH dissent.