Jack Lux v. Commissioner.
Lux v. Commissioner
Docket No. 40085.
United States Tax Court
T.C. Memo 1954-97; 1954 Tax Ct. Memo LEXIS 148; 13 T.C.M. (CCH) 655; T.C.M. (RIA) 54203; July 13, 1954. Filed *148 In 1946 and 1947, petitioner worked nights for a gambling enterprise, receiving a salary therefor which he reported as income on Form W-2, withholding statement, and ran his own horse betting operation during the daytime. In 1948 and 1949, petitioner conducted a horse betting operation for the gambling enterprise, which was operated by his employer. Held: (a) Petitioner's income for 1946 and 1947 was properly determined by respondent pursuant to the bank deposits method. His income for 1948 and 1949 was properly reconstructed by respondent, except for certain adjustments made herein, from the gambling enterprise's books and other evidence. (b) Petitioner's deficiencies for 1946 and 1947 were due, in part, to fraud with intent to evade taxes. No part of the deficiencies for 1948 and 1949 was due to fraud with intent to evade tax. (c) As a result of petitioner's fraud, assessment of deficiencies for 1946 and 1947 is not barred by the statute of limitations (section 276(a), I.R.C.). Moreover, such assessment may be made under the five-year statute of limitations (section 275(c), I.R.C.). *149 Eugene E. Gilmer, Esq., and Morel Montgomery, Esq., 733 Frank Nelson Building, Birmingham, Ala., for the petitioner. Frederick T. Carney, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in petitioner's income taxes, and asserted penalties, *150 as follows: 50 Per Cent
Fraud Penalty Year
Deficiency
(Section 293(b))
1946
$ 575.00
$ 287.50
1947
1,724.67
862.33
1948
2,791.54
1,395.77
1949
914.53
457.27
The issues for decision are: (a) whether the Commissioner erred in his reconstruction of petitioner's income for the tax years in question and his determination of income tax deficiencies on the basis thereof, (b) whether any part of petitioner's deficiencies resulted from fraud with intent to evade tax, and (c) whether the assessment of deficiencies and penalties for 1946 and 1947 is barred by the statute of limitations (section 275(a), I.R.C.). Findings of Fact Petitioner is an individual who, at all times here material, resided in Birmingham, Alabama, and filed his income tax returns with the Collector of Internal Revenue for the District of Alabama. He maintained no books or records for 1946 through 1949. Sometime prior to 1946 he had, for a period of 10 years, worked for the First National Bank of Birmingham, Alabama. His duties included the keeping of records and, consequently, he was familiar with bookkeeping procedures. A considerable degree of accuracy *151 was required in that bank work. Petitioner was unmarried during all the years in issue. In his returns filed for those years he claimed dependency exemptions for his mother and father, with whom he resided. He contributed some money to their support but there is no evidence as to the amounts thereof. The Commissioner in his determination of the deficiencies has not disallowed petitioner's claim for these dependency exemptions and they are not in issue here. 1946-1947 During 1946 and 1947, petitioner worked evenings as a stickman in a roulette game for H. M. McCoy, the owner of an illegal gambling house in Shelby County, Alabama. For this he was paid $10 a night and payment was made in cash at the end of each evening's work. As a consequence of raids on the gambling house by law enforcement authorities and resultant periods when the house was closed down, petitioner worked only 137 nights in 1946 and 126 nights in 1947. The total wages paid him by McCoy in those years were, therefore, $1,370 in 1946 and $1,260 in 1947. The only income tax returns filed by petitioner for those two years were his Forms W-2 reporting the above wages and indicating taxes withheld therefrom in the *152 amounts of $128.70 and $120.60, respectively. Each of the Forms W-2 was filed by petitioner prior to March 15th of the year following the taxable year to which it applied. The deficiency notice applicable to 1946 and 1947 was mailed on January 18, 1952. In 1946 and 1947, petitioner also was privately engaged during the daytime in taking bets on horses. He would drive out to a so-called horse room in Bessemer, Alabama, where he conducted that activity and, from there, he drove to McCoy's gambling house in time for his evening's work. Many of the bets petitioner took were "lay-offs" placed by other bookmakers. Petitioner maintained no books or records showing the result of his horse betting operation in 1946 and 1947. That operation was conducted almost exclusively on a cash basis with few, if any, checks passing either to or from petitioner. Petitioner maintained a checking account at the Security Commercial Bank, Birmingham, Alabama, in which he deposited the net receipts accumulated by him after payments to winning bettors. He claims that he occasionally found it necessary to withdraw cash from that account to pay off winning bettors when he did not have sufficient cash on hand *153 for that purpose, but there is no evidence indicating the amounts withdrawn therefor or in any way substantiating that claim. He did withdraw funds from the account for nondeductible personal living and other expenses and for support of his mother and father. The amounts spent for such expenses and support were, however, not proved. The deposits made to petitioner's bank account in 1946 and 1947 were for the most part in currency. Some checks were deposited. These deposits totaled $4,905 and $9,518.15, respectively. The balances in the bank account at certain pertinent dates were as follows: January 1, 1946
$ 500.00
December 31, 1946-January 1, 1947
1,700.00
December 31, 1947
700.17 In the course of the investigation of his returns by internal revenue agents petitioner stated to those agents that his only income for 1946 and 1947 was the salary paid him by McCoy. We find that the bank deposits represented income derived from petitioner's horse betting operation. In reconstructing petitioner's income for 1946 and 1947, respondent regarded the total bank deposits of $4,905 and $9,518.15, respectively, as gross income for those years. On the basis of petitioner's *154 statements to the revenue agents, however, respondent determined that the $1,370 and $1,260 salaries received from McCoy and reported by petitioner in those two years were included in those deposits. Consequently, respondent deducted those sums from the deposits and determined that the remainders, $3,535 and $8,258.15, represented unreported income for 1946 and 1947. We find that petitioner's total unreported income for 1946 and 1947 was the amounts determined by respondent. 1948-1949 In 1948, H. M. McCoy added a horse book and crap game to his operation and, because of petitioner's experience in taking bets on horses, placed petitioner in complete charge of that horse book. Petitioner was engaged in this activity throughout 1948 and 1949. The crap game and the horse book were one joint operation. Petitioner devoted all his time to the horse book but would have participated equally in any winnings from the crap game, if there had been any winnings. In 1948, there were no winnings from the crap game but, on the contrary, the net result of the operation of the crap game was a loss of $15,084. The horse book for that year showed gains of $30,267. The losses from the crap game were *155 deducted from the gain shown on the horse book and the resulting figure, less $6,375.30 for expenses, was carried on the schedule of the tax return, showing a one-third distribution. The $30,267 figure on the horse book was before deduction of some of the expenses. The expenses of $6,375.30 represented certain expenses of both the crap game and horse book. Petitioner's returns for 1948 and 1949 were prepared by an accountant employed by McCoy from information supplied by McCoy. The 1948 return reported gross income of $2,935.90 and a tax of $140. A statement attached to that return indicated the source of the reported income as follows: Total Receipts - Net
$15,183.00
Less: Expenses
Lights and Telephone
$1,800.00
Salaries
4,530.00
Payroll tax
45.30
6,375.30
Net profit
$ 8,807.70
Distribution
H. M. McCoy
$2,935.90
Charles A. Lux
2,935.90
Jack Lux
2,935.90
Total
$ 8,807.70 The 1949 return reported gross income of $4,450 and a tax of $376. The source of that income was labeled "Entertainment," but no further explanation or breakdown thereof was included. We find this $4,450 was from the operation of both the horse book and the crap game. *156 In his determination of the deficiency for 1949, the Commissioner has added to the $4,450 reported by petitioner on his return, $4,695.33. He has explained the addition of this $4,695.33 in his deficiency notice, as follows: "The taxpayer states that his income for this year consisted of one-third of the profit shown on the 'Horse Book' of H. M. McCoy plus a fifteen-dollar daily salary from H. M. McCoy. It has been determined from the 'horse Book' records that the business operated 313 days during 1949. The records show a total profit for the year of $13,351.00, one-third of which is income to Jack Lux. "One-third profit from 'Horse
Book'
$4,450.33
Daily salary $15 @ 313 days
4,695.00
Total income
$9,145.33
Adjusted gross income reported
4,450.00
(2a) Additional income
$4,695.33"
The entire bankroll for the horse book and crap game was supplied by McCoy and there is no evidence of any change in McCoy's ownership of the operation's physical assets. Petitioner received as compensation a salary of $15 for each day worked, plus one-third of the net income from the entire operation remaining after McCoy recovered the amounts he supplied the bankroll. On the *157 other hand, petitioner was not obligated to contribute funds to meet any net loss suffered. The amounts and times of withdrawals of profits from the operation, as well as the amounts and times of net income distributions made to petitioner from those withdrawals, were entirely within McCoy's control. Finally, McCoy could at any time terminate business relations with petitioner without, as a consequence, having to distribute any part of the operation's assets to him. A record referred to as the dice book was maintained for the crap game. Petitioner was familiar with the dice book but was not responsible for entries made therein. For the horse book a ledger was maintained and, also, daily report sheets. Petitioner was in complete charge of the horse book records and made almost all of the entries therein. Both the crap game and horse book records were maintained in the same manner. Expenses were deducted for the most part daily, as they were paid. Some expenses, however, were left for deduction at the end of the year. Entries also recorded the cash amounts added to the bankroll of each activity from time to time and the cash amounts withdrawn therefrom. The difference, in 1948, between *158 the total additions to the horse book bankroll and the total withdrawals equaled $30,267. However, a loss of $15,084 was suffered in the operation of the crap game. Consequently, the income realized from the entire operation before the deduction of certain expenses was $15,183 - which is the figure reported as "Total Receipts - Net" in the statement accompanying petitioner's 1948 return. As shown in our findings, the net income for 1948 from the entire crap game and horse book operation after the deduction of certain expenses was $8,807.70. Petitioner's one-third share thereof was $2,935.90, which was income properly reportable by him in 1948. This amount was reported in his return for 1948. He did not report, however, his daily wages of $15 for each day worked. In 1949, the horse book ledger shows that cash withdrawals exceeded additions to the bankroll by $13,351. Petitioner's one-third share of this equaled $4,450.33, and, in fact, he reported as income, $4,450. It was not claimed by petitioner that any additional expenses be deducted from the $13,351. Nor was any claim made, either by petitioner or respondent, that the $13,351 be increased or decreased to reflect profit or loss *159 from the crap game. We find as a fact, therefore, that petitioner's share of the gambling operation's net income for 1949, received as compensation by him and properly reportable on his return, was $4,450.33. As aforementioned, petitioner received from McCoy in 1948 and 1949, in addition to one-third of the net income from the gambling operations, a salary of $15 for each day worked. Petitioner worked 306 days in 1948 and 313 days in 1949. Petitioner's salary, therefore, which he failed to report as income was $4,590 in 1948 and $4,695 in 1949. Petitioner's income for 1948 and 1949 was composed of at least the following items of compensation paid him by McCoy: 1948
1949
33 1/3 per cent of net income
from the gambling opera-
tion
$2,935.90
$4,450.33
Salary of $15 for each day
worked
4,590.00
4,695.00
Total
$7,525.90
$9,145.33
Petitioner's deficiencies for 1946 and 1947 were due, at least in part, to fraud with intent to evade tax. No part of the deficiencies for 1948 and 1949 is due to fraud with intent to evade tax. Opinion BLACK, Judge: Respondent determined petitioner's income for 1946 and 1947 pursuant to the so-called bank deposits *160 method. For 1948 and 1949, respondent recomputed petitioner's income from the books and records of the H. M. McCoy gambling enterprise and by resort to certain other evidence. No adequate books or records concerning his income for 1946 through 1949 were maintained by petitioner. We find authority for respondent's action in Louis Halle, 7 T.C. 245, affd. (C.A. 2) 175 Fed. (2d) 500, certiorari denied 338 U.S. 949, wherein we said at pages 249 and 250: "The Commissioner need not accept, as complete, correct, and accurate, the returns filed or the sworn statement of the taxpayer that his returns completely and correctly disclose his tax liability. The Commissioner has authority to check the returns against the records of the taxpayer and, if no records have been kept or if the records are incomplete, inaccurate, or otherwise unsatisfactory, he may seek information elsewhere to discover, assess, and collect the full tax liability imposed by law. Estate of Robert Lyons Hague, 45 B.T.A. 104; affd. 132 Fed. (2d) 775." See also Boyett v. Commissioner (C.A. 5), 204 Fed. (2d) 205, affirming T.C. Memorandum Opinion [10 TCM 237,]. *161 1946-1947 In 1946 and 1947, petitioner received a salary of $10 for each night he worked as a roulette game stickman in H. M. McCoy's illegal gambling house. That salary totaled $1,370 in 1946 and $1,260 in 1947. He also made deposits, almost exclusively in cash, to his personal checking account of $4,905 in 1946 and $9,518.15 in 1947. Those deposits were composed for the most part of sums earned by petitioner in the conduct of a horse book which he operated for his own account during the days. A deposit would be made by petitioner when he felt he had accumulated sufficient net receipts, after pay-offs to winning bettors, to do so. He may have deposited some of his $10 a day wages in this account. How much he so deposited is not clear. However, respondent in his determination of the deficiencies has deducted it all, thus giving petitioner the benefit of the doubt. As a result of counterbalancing withdrawals from his bank account, the accountant's balance on December 31, 1946 was only $1,200 higher than on January 1, 1946, and its balance on December 31, 1947 was $999.83 lower than on January 1, 1947. Withdrawals were made for nondeductible personal expenses and for contributions *162 to the support of petitioner's mother and father, with whom he lived during all the years in issue and for whom he took dependency exemptions. Respondent has allowed these dependency exemptions. Petitioner claims that withdrawals were also made, on occasion, to pay off winning bettors when petitioner did not have sufficient cash on hand to do so. Although it is clear that in computing taxable income gambling losses may be deducted to the extent of gambling gains, section 23(h), I.R.C., petitioner failed to maintain any books or records or to introduce any evidence substantiating his claim or indicating the amount of withdrawals made from his bank account for the aforesaid purpose of paying off winning bettors. In this respect, the facts of the instant case are similar to those in Johnson v. United States (Ct. Cls.), 39 Fed. Supp. 103, wherein a gambler's income was computed by respondent pursuant to the bank deposits method and the court refused to allow deductions from such income for withdrawals which the gambler, who maintained no books or records, claimed were for the purpose of meeting gambling losses. The court there said, at p. 108: "Taxpayers *163 engaged in a legitimate business are required to keep records which will support deductions claimed in their returns and from which a determination can be made of the amount of profit or loss sustained in a given business. Certainly less should not be required of a taxpayer engaged in an unlawful business. * * *" Similarly, we hold that petitioner here is not entitled to deductions from income, as computed by respondent, for alleged withdrawals from his bank account to pay off winning bettors. Our holding is not affected by the fact that the difference in petitioner's bank balance as of January 1 and December 31, 1946 was not as great as the amount of deposits made during that year or that his bank balance on December 31, 1947 was actually less than on January 1, 1947. Failure to accumulate wealth during the taxable year, though evidential, does not negative the realization of income. Estate of Robert Lyons Hague, 45 B.T.A. 104, 110, affd. (C.A. 2) 132 Fed. (2d) 775, certiorari denied 318 U.S. 787. In any event, the petitioner has been given the benefit of the doubt by respondent's computation of his unreported income. Respondent, in making *164 that computation, deducted from petitioner's bank deposits in 1946 and 1947 the salary petitioner received from McCoy in those years and reported as income. Apparently this was done on the assumption, based on petitioner's statement to the examining revenue agents, that such salary was reflected in the bank deposits. It is clear to us that petitioner has failed to carry his burden of proving that respondent's determination of his 1946 and 1947 income pursuant to the bank deposits method was erroneous. We, therefore, sustain respondent as to those years. 1948-1949 In 1948 and 1949, petitioner ran a horse book for H. M. McCoy. His returns for those years indicated on their faces that he was engaged in McCoy's gambling enterprise as a partner or joint venturer along with McCoy and Charles Lux, petitioner's brother, in the operation of the crap game and the horse book. However, such entries are not controlling in determining if a partnership or joint venture really existed. Estate of E. A. Wickham, 22 B.T.A. 1393, affd. (C.A. 8) 65 Fed. (2d) 527. A partnership is said to be created when persons join together in the conduct of a business and when there *165 is a community of interest in the profits and losses. Whether or not a partnership exists depends upon the intent of the parties, which is a question of fact. Commissioner v. Culbertson, 337 U.S. 733; Commissioner v. Tower, 327 U.S. 280. The existence of a joint venture, similarly, is determined by the intent of the parties. Lucia Chase Ewing, 20 T.C. 216, 230, affd. on another issue (C.A. 2) 213 Fed. (2d) 523. The facts in this connection are that there was no evidence of any partnership or joint venture agreement between the parties; McCoy supplied the entire bankroll for the operation and was personally to bear all the losses; McCoy had complete control of the amounts and times of distribution of earnings; all the physical assets appear to have been owned by McCoy, with petitioner having no proprietary interest therein; McCoy could terminate petitioner's services without a consequent distribution of those assets; and McCoy supplied an accountant with all the information upon which to base the tax returns of himself, petitioner and Charles Lux, but no partnership returns were filed for the years in issue. An examination of these *166 facts convinces us that the requisite intent to form a partnership or joint venture was lacking and, therefore, no such business structure existed in 1948 and 1949. Rather, the relationship between McCoy and petitioner was that of employer-employee, the latter receiving compensation measured by a daily $15 wage and, in part, by a percentage of the net profits. Lucia Chase Ewing, supra; Isadore Louis Rosenberg, 15 T.C. 1; Plains Realty Co., 31 B.T.A. 412. We have found that the net profits of McCoy's gambling operation for 1948 were $8,807.70 and that petitioner's share thereof was $2,935.90. Regarding 1949, there is only a minor discrepancy between the amount of net profits reported by petitioner as income from the gambling operation ($4,450) and our finding as to the amount of net profits actually received by him ($4,450.33). We have further found that in 1948 and 1949, petitioner, in addition to his share of the net profits, was paid a salary of $15 for each day worked. This salary totaled $4,590 in 1948 and $4,695 in 1949. Petitioner contends that he only received one-fourth of the operation's net profits in 1948 and 1949, rather than *167 one-third, and that the $15 per day salary was included therein (not in addition thereto). We have carefully examined the evidence and we think it sustains respondent's determination that in 1948 petitioner worked 306 days for McCoy at $15 a day and in 1949 he worked 313 days for McCoy at $15 a day and that he was paid these sums in cash. We think it also sustains respondent's determination that petitioner received one-third of the profits from the operation of the crap game and the horse book, instead of one-fourth of these profits as he claims. Fraud Penalties 1946-1947 Respondent determined 50 per cent fraud penalties against petitioner for each of the tax years in issue. Section 293(b), I.R.C. In a civil suit respondent must prove fraud by clear and convincing evidence, that is, respondent must show that petitioner intentionally evaded a tax believed to be owing. Section 1112, I.R.C.; Wiseley v. Commissioner (C.A. 6), 185 Fed. (2d) 263. What constitutes fraud is a question of fact which must be decided on the basis of all the conditions and circumstances surrounding the transaction. Wallace H. Petit, 10 T.C. 1253; *168 William W. Kellett, 5 T.C. 608. For the years 1946 and 1947, the only income tax returns filed by petitioner were his Forms W-2 reporting $1,370 received in wages in 1946 from McCoy and $1,260 received in 1947 from the same source. The evidence convinces us that in 1946 and 1947 petitioner received considerable amounts of net income from the horse book operations which he was carrying on in those two years on his own account. Petitioner in his testimony at the hearing conceded that he received some net income from this source in 1946, although he claimed he had a loss in 1947 from the horse book operation. This latter fact he did not substantiate and we are convinced that he had net income in 1947 from the horse book operation, as well as in 1946. As we have already explained, the only income tax returns which petitioner filed for 1946 and 1947 were his Form W-2 withholding statements. He must have known that he had net income in both years from his horse book operations and yet he reported none of it. We have, therefore, found that petitioner's deficiencies for 1946 and 1947 were due, at least in part, to fraud with intent to evade tax. The Commissioner's determination *169 of fraud penalties for those years is sustained. Fraud Penalties 1948-1949 The situation as to the assessment of fraud penalties against petitioner for 1948 and 1949 is different from what it is as to 1946 and 1947. Income tax returns on Form 1040 were filed by petitioner for 1948 and 1949 but they were not prepared by him. They were prepared by an accountant from information and data furnished by McCoy. The accountant testified at the hearing, as a witness for respondent, to that effect. The following questions and answers occur in the accountant's testimony: "Q When the returns were completed who picked them up? A When the returns were completed, we called Mr. McCoy and either he or some one else picked them up. I don't know who picked them up. Q Did you personally know the Lux boys, Jack or Charles? A I do not. Q Did you ever have any conference or conversation with them about either return, 1946, 1947, 1948 and 1949? A No." McCoy is dead and his testimony was not available at the hearing. As has been noted in our Findings of Fact petitioner's returns for 1948 and 1949, prepared by the accountant, reported petitioner's one-third share of the profits from the *170 gambling operation of the crap game and the horse book. These profits were based upon information furnished by McCoy and not by petitioner. So far as they went, they appear to have been correctly reported. However, the return for 1948 did not report anything for wages paid by McCoy to petitioner nor did the return 1949 report anything for wages. The returns, as we have already stated, were not prepared by petitioner or under his direction. They were prepared by an accountant under the direction of McCoy and from information furnished by him. It was clearly negligence on the part of petitioner to sign these returns without their containing anything for wages received by petitioner from McCoy. But negligence, however great, is not equivalent to fraud. Mitchell v. Commissioner, 118 Fed. (2d) 308. In this latter case the Fifth Circuit held that fraud means actual, intentional wrongdoing and the intent required is the specific purpose to evade a tax believed to be owing. Mere negligence, whether slight or great, is not the equivalent of fraud. See also our decision on remand in William E. Mitchell, 45 B.T.A. 822. We do not think that respondent has proved by *171 clear and convincing evidence that petitioner's returns for 1948 and 1949 were fraudulent with intent to evade tax. The Commissioner's determination of fraud penalties for 1948 and 1949 is not sustained. Statute of Limitations Petitioner contends that the assessment of deficiencies and penalties for 1946 and 1947 is barred by the three-year statute of limitations in section 275(a) of the Code. However, since we have held that petitioner's deficiencies for those years were due, at least in part, to fraud with intent to evade tax, there is no statutory bar upon the time for assessment of those deficiencies or the penalties here in question. Section 276(a) of the Code. [1] Moreover, the statutory deficiency notice for those years was mailed within five years after the returns were filed and petitioner omitted from those returns gross income in excess of 25 per cent of the amount of gross income reported therein. Consequently, the five-year statute of limitations prescribed in section 275(c) of the Code [2] is also applicable. *172 Decision will be entered under Rule 50. Footnotes
1. SEC. 276. SAME - EXCEPTIONS. (a) False Return or No Return. - In the case of a false or fraudulent return with intent to evade tax or of a failure to file a return the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time. * * *↩
2. SEC. 275. PERIOD OF LIMITATION UPON ASSESSMENT AND COLLECTION. (c) Omission from Gross Income. - If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 5 years after the return was filed.↩